GastoN, Judge
 

 After stating the ease as above, proceeded:
 

 The counsel for the appellant contends that the note having been executed in Yirginia, for the payment of money
 
 there,
 
 the law of Yirginia, and not that of North-Carolina furnishes the rule for .ascertaining the liability of the makers
 
 ;
 
 that the engagement of the endorser being subsidiary to, and dependant on that of the makers, the endorsement, although made in this State, must be interpreted also by the same law; and from these propositions, he infers as a .necessary consequence, that the judge erred in applying to this case, the enactments of our Statute of 1827. The first proposition is undeniable. The law of the place where a contract was made furnishes in general the rule for its exposition. But when it appears from the nature of the contract that the parties had reference to the law of another State, the law thus referred to, furnishes the rule for ascertaining their intent, and of course for expounding the contract. The note having been made in Yirginia, and promising the payment of money in Yirginia, the law of Yirginia, if different from that of North-Carolina, must be regarded by us as determining the liability of the makers. But the court does not accede to the second proposition, in the sense in which it is understood and urged by the defendants counsel. It is true that the engagement of an endorser is to a certain extent^
 
 *124
 
 subsidiary to, and dependent on the engagement of the maker of a negotiable note. It binds the endorser to the performance of certain duties in the event of a failure
 
 0f
 
 |j)e uiake-r to comply with his engagement. Whenever therefore, the question arises in an action against an endorser, whether there has been a default in the maker, the law which expounds the contract of the maker must be referred to, in order to determine this question. If the maker was bound by that law to pay on the day named in the note, a non-payment on that day is a default. If he was entitled by that law to certain days of grace, there is no default until after the expiration of the time of grace. But the contract of an endorser according to the mercantile law, is a distinct contract from that of the maker. The engagement of the maker, like that of the acceptor of a bill of exchange, is an absolute promise to pay the sum named in the instrument, according to its legal meaning, Tiie
 
 engagement of the
 
 endorser, like that of the drawer of a bill of exchange, is not a promise to pay the money at the time and place mentioned in the instrument, but an undertaking in case the money be not thus paid by him who has stipulated to pay it, to indemnify the endorser against this disappointment. When therefore a note is endorsed in a different country from that in which it was made, or the money promised to be paid, the contract of the endorser referring to the law of no other country for its performance, must be interpreted by the law of the place where the endorsement was
 
 made
 
 — that law determines the nature and extent of
 
 Ms
 
 liability.
 

 But it is further contended on the part of the appellant, that the judge erred in applying to
 
 this
 
 case the enactments of the act of 1827, because that act docs not embrace within its provisions endorsements made in in our State, of notes executed without, and payable without the State. The act is in these words: “When any “ bill, bond or promissory note made negotiable by the
 
 “
 
 act passed in the year 1762, entitled ‘ an act for the
 
 iS
 
 more easy recovery of money due upon promissory “ notes, and to render such notes negotiable, and by the
 
 *125
 
 “act passed in tlie year 1786, entitled ‘an act to make “ the securities therein named negotiable,’shall be endors- “ ed after the first day of May next — such endorsment, “unless it be otherwise plainly expressed therein, shall
 
 “
 
 render said endorser, or endorsers liable, as surety, or “ sureties to any holder of such bill, bond or promis- “ sory note. Provided that nothing herein contained “ shall in any respect apply to bills of exchange inland
 
 “
 
 or foreign.” The act of 1762 here referred to, after reciting that “ promisory notes arc of great utility as “ well to merchants as others,” and that there is “ no “ method of recovering money specified in such notes by i£ any act of assembly in force in the (then) province,?’ for remedy thereof enacts, that upon
 
 all
 
 notes signed by any person promising the payment of money to any other person or order, the money mentioned in such note, shall be construed to be by virtue thereof due to such person to whom the saméis madepayble ; that
 
 such
 
 note may be assignable over in like manner as inland bills of exchange are by custom of merchants in England ; that the payee or payees may maintain an action for the same as they might upon such bill of exchange; and that the assignee of
 
 such
 
 note may maintain an action against the person or persons who shall have signed or have endorsed the same, as in cases of inland bills of exchange. The other act referred to, that of 1786, recites that “it would contribute to the convenience of merchants, traders and other inhabitants in the interchange of property which traffic makes necessary, that bills, bonds and notes, as well those without, as those with seal, should be made negotiable,” and then enacts that
 
 all
 
 bills, bonds and notes for money as well those with, as those without seal, those which are not expressed to be payable to order and for value received, as those which are so expressed, shall be held and deemed to be negotiable; and the interest and property therein shall be transferable by endorsement in the same manner, and under the same rules as promissoiy notes have been, and that the endorser may have his action thereon in his proper name, as suits have been maintained by endorsers of promissory
 
 *126
 
 notes.” The question then is, whether notes marie with«f out
 
 the
 
 State, and not stipulating for the
 
 payment
 
 of money within it, arc rendered negotiable here, within the purview of these arts? It is highly important to the community, and especially to the mercantile part of it, that all doubts which may exist on this question should, if possible, be removed. The enacting words of these statutes are unquestionably comprehensive enough to embrace notes wherever made, or wherever payable— The first speaks of
 
 all
 
 notes signed by any person promising the payment of money to any other person, and the second of
 
 all
 
 bills, bonds and notes for the payment of money. There is no reason furnished by the preambles of the acts, or by any of their enactments, to induce a
 
 belief that these
 
 comprehensive words should' receive a restricted interpretation. The preamble to the first recognizes the great utility of promissory notes to merchants and others, and the second declares the conviction of the Legislature that the convenience of the country, and the extension of its traffic, required that bonds as well as notes should be rendered negotiable. The object of both acts is to promote the circulation of negotiable paper, by furnishing to the holders, remedies in their own names against all responsible upon it. To deny these remedies upon all paper not executed here, or not made payable here, would be to abridge, to cramp and to discourage this medium for the interchange of property, to the injury of the mercantile and trading-part of the community. All acquainted with the history of bills of exchange and of promissory notes, know that there was a long struggle on the part of the merchants, "to give the freest circulation to these instruments of mercantile credit, against the technical rules of law forbidding the assignment of choses in action, in which struggle they partially succeeded by the force of custom, and more fully by the help of positive legislative enactments. The acts now under consideration evince a strong desire in the Legislature to take part with the mercantile community against these technicalities, and those who expound the acts would be bad interpreters
 
 *127
 
 of legislative action, if they narrowed the range of plain words to counteract this desire. The conclusion to which this reasoning conducts us, is, that the acts of 1762 and 1786 were intended to render negotiable here, all notes and bonds wherever made, or wherever payable. We are much strongthcd in this conclusion by an adjudication made in England on the statute of 3d and 4th
 
 Anne c.
 
 9, (of which the act of 1762 is almost a verbal copy,) and which is believed to be decisive on the construction of that statute. In the case of
 
 Milne
 
 v.
 
 Graham,
 
 (8
 
 Eng. C. L. R.
 
 57,) where an action was brought in England, by the endorsee, against the maker of a promissory note made in Scotland, it was objected that this action could not be maintained, because the note was not made in England, and it was insisted that this statute only contemplated inland promissory notes. The objection being overruled, and the plaintiff having obtained a verdict, a new trial was moved for, but refused by the court of King’s Bench. The judges declared the case to be both within the words and the spirit of the statute of
 
 Anne.
 
 Within the words, for they comprehended “all notes,” and within the spirit, for the act was made for the advancement of trade, and it was for the advantage of commerce that foreign as well as Inland notes should be negotiable. We hold then, that the note given by the
 
 Rogersons to the
 
 defendant was negotiable here, under our acts of 1762 and 1786, and that our act of 1827 applies to every note so made negotiable.
 

 Whether the act of 1837, <lis.-penses with that noti°e. whicl1 “ requisitoto charge one who is secon-halle. Qul
 

 We have doubted whether the case did not present another question for our consideration. The act of 1827 having declared that an endorser shall he liable a,s surety, dispenses with that notice which theretofore was necessary by the mercantile law, to charge him as endorser. But it may be asked whether he can be sued as though he had joined with the maker in the execution of , , A . . the note, or must he not be sued upon an engagement as surety for another, to pay in the event of default of the .
 
 *
 
 principal debtor?" It the latter course must be pursued, did not the judge err in dispensing with all notice of the maker’s default; for is not such notice an inti ispea-
 
 *128
 
 sable pre-requisite to every action brought upon a conditional and secondary promise, to be liable upon another’s failure? But we shall not here enter upon this enquiry, for on examination of the case stated we do not perceive, nor have we any reason to believe, that any such question was raised below. Indeed the counsel for the appellant has very candidly admitted that it was not. The controversy clearly was, whether the note having been executed in Virginia for the payment of money there, the endorser was liable under our act of 1827. If the defendant had objected that a demand upon him, before the institution of the suit was necessary, this objection ought to have been distinctly stated; and we must understand the language of the judge, as applicable
 
 to the
 
 matter then controverted.
 

 Per Ctjriam — Judgment
 
 affirmed.